IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. HEWITT, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO.  4:17-cv-2545 |
| HELIX ENERGY SOLUTIONS GROUP, INC. & HELIX WELL OPS INC. | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

OBERTI SULLIVAN LLP

By:     s/ Edwin Sullivan
        Edwin Sullivan
        State Bar No. 24003024
        S.D. Texas ID No. 24524
        712 Main Street, Suite 900
        Houston, TX 77002
        (713) 401-3557 – Telephone
        (713) 401-3547 – Facsimile
        ed@osattorneys.com – Email

        ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

Mark J. Oberti
State Bar No. 00789951
S.D. Texas ID No. 17918
OBERTI SULLIVAN LLP
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

I.    SUMMARY ................................................................................................................1

II.   UNDISPUTED FACTS ..............................................................................................3

     A.    Mr. Hewitt Was Paid A "Day Rate" For His Work, And His Pay Was Based On the Quantity Of Days Worked In A Workweek ......................................................3

     B.    Helix Did Not "Guarantee" Plaintiff A Weekly Rate Of Pay ...............................5

III.  SUMMARY JUDGMENT STANDARD .....................................................................6

IV.   HELIX DID NOT PAY MR. HEWITT A SALARY .....................................................6

     A.    The FLSA and related DOL regulations ..............................................................6

     B.    Helix has the burden of proof ..............................................................................7

     C.    A "salary" requires a weekly guarantee ...............................................................8

     D.    Helix paid Mr. Hewitt a "day rate," not a "salary," and the day rate it paid him was not a "weekly guarantee" ...............................................................................8

     E.    A "salary" can be computed on a daily basis, but it still requires a weekly guarantee .............................................................................................................10

     F.    Helix presented no evidence of a *weekly* guarantee ...........................................11

V.    HELIX'S MISCLASSIFICATION AS A MATTER OF LAW DOOMS ITS "GOOD FAITH" DEFENSE .................................................................................................13

VI.   CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Coil Tubing Servs., L.L.C.*,
   755 F.3d 279 (5th Cir. 2014) .................................................................................7

*Arnold v. Ben Kanowsky, Inc.*,
   361 U.S. 388 (1960) ..............................................................................................7

*Bayle v. Allstate Ins. Co.*,
   615 F.3d 350 (5th Cir. 2010) .................................................................................7

*Bernard v. IBP, Inc. of Neb.*,
   154 F.3d 259 (5th Cir. 1998) ...............................................................................13

*Bolick v. Mgmt. by Skylane,* LLC;
   Civ. A. No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct. 14, 2008)............................ 13, 14

*Cunningham v. Faerber's Bee Window, Inc.*,
   No. 1:04CV500-LJM-VSS, 2005 WL 1123634 (S.D. Ind. Apr. 19, 2005) ..........................8, 9

*Dufrene v. Browning-Ferris, Inc.*,
   207 F.3d 264 (5th Cir. 2000) ...............................................................................8, 9

*DuFrene v. Browning-Ferris, Inc.*,
   994 F. Supp. 748 (E.D. La. 1998).........................................................................9

*Hughes v Gulf Interstate Field Servs.*,
   878 F.3d at 183 ............................................................................................ 11, 12

*Keen v. DXP Enterprises, Inc.*,
   No. 5:15-CV-137-OLG, 2016 U.S. Dist. LEXIS 81069, 2016 WL 3253895 (W.D. Tex.
   June 6, 2016)............................................................................................. 9, 11

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ................................................................................6

*Meza v. Intelligent Mexican Mktg., Inc.*,
   720 F.3d 577 (5th Cir. 2013) ................................................................................7

*Mumby v. Pure Energy Servs. (USA), Inc.*,
   636 F.3d 1266 (10th Cir. 2011) .........................................................................9, 14

*Riddle v. Tex-Fin, Inc.*,
   Civil Action No. H–08–31212011, WL 1103033 (S.D. Tex. Mar. 22, 2011) ........................14

*Samuel v. Holmes*,
   138 F.3d 173 (5th Cir. 1998) ................................................................................6

*Singer v. City of Waco*,
  324 F.3d 813 (5th Cir. 2003) ............................................................... 13

*Songer v. Dillon Res., Inc.*,
  618 F.3d 467 (5th Cir. 2010) ................................................................. 7

*Tran v. Thai*,
  NO. CIV.A. H-08-3650, 2010 WL 5232944 (S.D. Tex. Dec. 16, 2010) ................................ 14

**STATUTES**

29 U.S.C. § 201, *et seq.* ........................................................................ 1

29 U.S.C. § 207(a)(1) ............................................................................ 7

29 U.S.C. § 213(a)(1) ............................................................................ 7

29 U.S.C. § 216(b) ............................................................................. 13

**OTHER AUTHORITIES**

*Dept. of Labor Op. Ltr. FLSA*-723 (Dec. 7, 1940) ................................................ 11

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, Fair Labor Standards Act (July 9,
  2003), 2003 DOLWH LEXIS 3, 2003 WL 23374601 ................................................ 11

**RULES**

Fed. R. Civ. P. 56(c) ............................................................................ 6

**REGULATIONS**

29 C.F.R. § 541.100 .............................................................................. 7

29 C.F.R. § 541.200 ........................................................................... 7, 14

29 C.F.R. § 541.601 ........................................................................... 7, 14

29 C.F.R. § 541.601(b) ........................................................................... 7

29 C.F.R. § 541.602(a) ........................................................................ 8, 12

29 C.F.R. § 541.602(a)(2) ......................................................................... 2

29 C.F.R. § 541.604(b) .................................................................. 8, 10, 11, 12

29 C.F.R. § 541.709 ............................................................................. 11

29 C.F.R. § 778.112 .............................................................................. 8

29 C.F.R. § 778.113 .............................................................................. 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. HEWITT, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO.  4:17-cv-2545 |
| HELIX ENERGY SOLUTIONS GROUP, INC. & HELIX WELL OPS INC. | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Michael J. Hewitt ("Plaintiff" or "Mr. Hewitt") files his Motion for Partial Summary Judgment on Defendants' Helix Energy Solutions Group, Inc. and Helix Well Ops Inc. ("Helix") pleaded defenses that Plaintiff (1) was an exempt employee under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"),[1] and (2)  acted in "good faith" when it classified him as exempt.

## I.    SUMMARY

This is a simple case in which all of the major facts are undisputed.  The critical question is legal:  Did Helix prove that it paid the Plaintiff a salary?  If so, given Mr. Hewitt's job duties, Plaintiff would agree that this would render him an exempt employee from the FLSA's overtime requirements.  If not—and the evidence overwhelmingly supports the fact that Helix did not pay Mr. Hewitt a salary—then he is a non-exempt employee who is entitled to overtime pay.

---

[1] Doc. 20 at affirmative defense 4; Doc. 20 at affirmative defense 5-6.

It is undisputed that Helix paid Hewitt on a daily basis, commonly referred to as a "day rate." A day rate is a fixed sum of money paid to an employee for the "day," no matter how many hours the employee worked during the day.

The amount of weekly pay Mr. Hewitt received depended on the number of days he worked in a particular week. Mr. Hewitt had a high day rate, but it was subject to fluctuations. Nevertheless, because he actually received $455 a day even if he only worked one day during a week, in order to meet their burden of proof, Helix argues that Mr. Hewitt was paid on a salary basis, and that he is, therefore, exempt from the FLSA's overtime-pay requirements.

This is a clever, and too cute by half argument, which should be rejected. Helix did not pay Mr. Hewitt on a salary basis because Mr. Hewitt's pay fluctuated based on the "quantity" of his work. If Mr. Hewitt only worked two days during the week, Helix would only pay him his day rate twice. If he worked three days during the week, Helix would only pay him his day rate three times. And when Helix had no work available for Mr. Hewitt on a particular day, Helix would not pay Mr. Hewitt for that particular day. Such conduct is inconsistent with the FLSA's salary-basis requirement. *See* 29 C.F.R. § 541.602(a)(2) (the alleged salary may not be reduced "for time when work is not available"). Helix made no *weekly guarantee* of pay, and the records show his pay fluctuated greatly.

Further, Helix's testimony from its Director of HR is clear that the exemption is purely based on the fact that toolpushers like Mr. Hewitt had supervisory duties. This is insufficient as a matter of law to support a good faith defense to the imposition of liquidated damages under the FLSA.

Accordingly, this motion should be granted, partial summary judgment should be entered, and a trial should proceed on the minor remaining issues.

## II.   UNDISPUTED FACTS

The facts below demonstrate two things that eviscerate Helix's argument that it paid Mr. Hewitt on a salary basis:  (1) Mr. Hewitt's pay was based on the number of days he worked each week; and (2) there was no weekly guarantee of a day rate at a particular rate.

### A.   Mr. Hewitt Was Paid A "Day Rate" For His Work, And His Pay Was Based On the Quantity Of Days Worked In A Workweek

On October 31, 2014, Helix sent Mr. Hewitt an offer letter to work for it as a Toolpusher, beginning in December 2014, which he accepted.[2]  He worked for Helix until it ended his employment on August 1, 2017.[3]

At the beginning of his employment, Helix provided Mr. Hewitt with an offer letter explaining that he would be paid a "daily" rate:

> Following are the proposed compensation elements for this position which should be in accordance with our prior discussions:
>
> Pay Rate:             $1,341.00 daily (to be paid on a bi-weekly basis)

(Ex. A-3).[4]  Mr. Hewitt's pay slips also indicate that he was paid a *daily* rate—i.e., not a *weekly* rate:

> Pay Basis    **Daily**
> Frequency    **Week**

(Ex. A-11).

On his "New Hire Action Notice," Helix indicated his pay rate was "daily:"

| Job Title: Toolpusher | | Start Date: Dec 8, 2014 | |
|---|---|---|---|
| Pay Rate: 1,341.00 | Hourly ☐ | Daily ☒ | Annually ☐ |

---

[2] Ex. A (Deposition of Michael Hewitt); Ex. A-3 (offer letter).  Helix Well Ops, Inc. is owned by Helix Energy Solutions Group, Inc. and all witnesses agreed to use the term "Helix" in response to questions posed during the case's depositions.

[3] Ex. A-7.

[4] Ex. A at 34:4-7 (Q. And you'll see that you were offered a pay rate of $1341 daily, to be paid on a biweekly basis; is that correct? A. Correct).

(Ex. B-2).  Hewitt responded to a request for Verification of Employment by writing that Mr. Hewitt's "current position is a Tool Pusher in which he earns approximately $213,744.00 based on his *daily* rate of $1,171.20."[5]

As far as Mr. Hewitt knew, he was not entitled to overtime, so he never asked for overtime.[6] Critically, Helix rests its decision not to pay overtime to Mr. Hewitt and other toolpushers "[b]ecause they are in a supervisory role" and for no other reason.[7]  Thus, Helix did not take into account the salary issue in determining whether to pay toolpushers overtime.

Plaintiff typically worked "[t]welve-hour shifts, seven days a week for 28 days."[8] Regardless of the hours worked in a day, he was always paid the daily rate, and his rate of pay was not based on the *quality* of his work.[9]  Brian Butler, a Senior Project Manager for Helix, testified the employees "are paid a day rate whether they work a full day or just wake up on one of our boats."[10]  Kenric McNeal, Human Resources Director for Helix, agreed that "[a] day rate is paid at Helix not based on the hours worked per day.  It's just if the person works at all during the day, they are paid the same rate."[11]

Even though his pay was not reduced based on the *quality* of his work, his wages varied based on the *quantity* of his work.  If he worked "zero days a week," he would receive "nothing."[12]

---

[5] Ex. B-6 (emphasis added).

[6] Ex. A at 34:21-34; Ex. 36:17-21.  Kenric McNeal, Helix's Human Resources Director, testified that he assumed a predecessor made the decision not to pay overtime to toolpushers.  (Ex. C at 14:8-10; 15:8-10) (Deposition of Kenric McNeal).

[7] Ex. C at 18:18-23 ("Q.  Okay.  Good for you.  All right.  To your knowledge, why are toolpushers not eligible for overtime at Helix? A. Because they are in a supervisory role.  Q. Okay. Anything else? A. No.").

[8] Ex. A at 58:19-23.

[9] Ex. A at 44:14-17; Ex. A at 43:12-13 ("They did not reduce my pay on quality of work").

[10] Ex. B at 37:21-22 (Deposition of Brian Butler).

[11] Ex. C at 20:1-5.

[12] Ex. A at 62:20-24.

His pay was "totally based on the days that [he] worked.[13]  His pay records confirm this, as they show varying amounts of pay based on days worked in a workweek.[14]  Mr. Butler agreed that Mr. Hewitt's pay varied on the days worked in a workweek:

> Q.    If he worked one day a week, he would just receive one pay rate—he would receive one day rate, correct?
> A.    If he worked two days a week, he would get two day rates?
> A.    Correct.
> Q.    Three is three day rates, four is four day rates, five is five day rates, all the way up to  seven, which is seven day rates?
> A.    Yes.

(Ex. B at 25-11).  Mr. Hewitt's pay records conclusively corroborate this testimony.[15]

**B.    Helix Did Not "Guarantee" Plaintiff A Weekly Rate Of Pay**

Mr. Hewitt testified that, for any workweek in which he performed work, he was paid at least $455 per week.[16]  Nevertheless, he was not guaranteed any *weekly* amount of pay.  And, his day rate could be raised and lowered at whim.  Helix lowered Mr. Hewitt's day rate for economic reasons.[17]  Mr. Butler, a defense witness, indicated that a day rate was not a guarantee of payment at a particular rate of pay:

> Q.    No, I'm suggesting that—well, I'm suggesting that the company can pay a different day rate depending—for whatever reason it wants.  These are at-will employees, correct?
> A.    To my knowledge, yes, sir.
> Q.    Yeah, and sometimes business necessity demands a decrease in the individual daily rate, correct?
> A.    Correct.

---

[13] Ex. A at 64:20-22.

[14] Ex. A-4.

[15] Ex. A-4 at Helix 129 (pay for one day at one day rate); A-4 at Helix 95 (pay for two days at two day rates); A-4 at Helix 127 (pay for three days at three day rates); A-4 at Helix 147 (pay for four days at four day rates); A-4 at Helix 160 (pay for five days at five day rates and seven days at seven day rates); A-4 at Helix 133 (pay for six days at six day rates).

[16] Ex. A at 40:6-10.

[17] Ex. A at 68:1-4; 17-21.

Q.     And sometimes competition and the laws of economics demand an increase in the day rate, depending on the supply and demand of the various positions needed, correct?

A.     Correct.

Q.     So day rates can go up and they can go down to the various individuals employed at Helix who earn a day rate, right?

A.     Yes.

(Ex. B at 36:9-37:1).  Mr. McNeal, HR Director testified that decisions to make about day rates are entirely within the discretion of the "senior vice president of Well Ops" after discussion with the "COO" and that they could "lower day rates without a justification."[18]

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV.   HELIX DID NOT PAY MR. HEWITT A SALARY

### A.     The FLSA and related DOL regulations

The FLSA prohibits, for qualifying employees, employment "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours

---

[18] Ex. C at 33:3-21.

above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  Some employees, however, are exempt from this requirement. *See id*.  The FLSA's overtime-pay requirements do not apply, for example, to employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  The Secretary of Labor has exercised its broad authority to define and delimit the scope of these exemptions.  The resulting regulations are codified at 29 C.F.R. § 541.100 *et seq.*

> **B.     Helix has the burden of proof**

Since an exemption under the FLSA is an affirmative defense, Helix carries the burden of proof with respect to application of the exemption. *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014) (citing *Songer v. Dillon Res., Inc*., 618 F.3d 467, 471 (5th Cir. 2010)).  To meet this burden, Helix must "prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, (1960)).  In order to establish that he is entitled to summary judgment, Mr. Hewitt must "demonstrate an absence of evidentiary support in the record" for Defendant's affirmative defense. *Bayle v. Allstate Ins. Co*., 615 F.3d 350, 355 (5th Cir. 2010).

There are two applicable exemptions in this case.   The FLSA's "Administrative" exemption and the FLSA's "Highly Compensated Employee" exemption.   Both exemptions require the Defendants to prove three elements:  (1) a duties test; (2) a salary-level test; and (3) a salary-basis test.  29 C.F.R. § 541.200 (administrative exemption); 29 C.F.R. § 541.601 (highly compensated employee exemption).

For purposes of this motion, Mr. Hewitt does not contest the so-called "duties" test of either exemption.  Thus, Helix is required to prove that Hewitt was paid on a "salary basis" to meet the exemption. 29 C.F.R. § 541.601(b).  In other words, Helix is required to prove as a matter of law

that Hewitt was paid a "salary" as defined by the FLSA rather than some other form of compensation, such as hourly, day rate, commission or piece rate.

### C.    A "salary" requires a weekly guarantee

Section 541.602(a) of the FLSA's regulations define the term "salary:"

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a).  The "predetermined amount" of the salary must cover a period of at least one week—it cannot cover a shorter period (though *longer* periods are allowed, such as a monthly salary, as that is a "*less frequent* basis" than weekly).  *Id.*

### D.    Helix paid Mr. Hewitt a "day rate," not a "salary," and the day rate it paid him was not a "weekly guarantee"

A "day rate" is defined by the regulations as "a flat sum for a day's work . . . without regard to the number of hours worked in the day." 29 C.F.R. § 778.112.  An employee paid on a day rate is entitled to overtime compensation.  *Id.*

Payment on a day rate by definition necessarily compensates a worker based on the "number of days worked."  The regulations make a clear distinction between a salary basis and a day-rate basis.  *Compare* 29 C.F.R. § 541.602(a) and 29 C.F.R. § 778.113 *with* 29 C.F.R. § 541.604(b) and 29 C.F.R. § 778.112.  While salary and day-rate pay plans share some common traits, a day rate is not a salary.  *See Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268 (5th Cir. 2000) ("But, employees here are *not* paid a salary for a workweek. Instead, they are paid for the number of days they work in a week: a day-rate.") (emphasis in original); *Cunningham v. Faerber's Bee Window, Inc.*, No. 1:04CV500-LJM-VSS, 2005 WL 1123634, at *3 (S.D. Ind. Apr.

19, 2005) (distinguishing between the two).  Because a "day rate" pays employees for days worked—based on the quantity of the work performed—it is not a salary.  *DuFrene v. Browning-Ferris, Inc.*, 994 F. Supp. 748, 754 (E.D. La. 1998), *aff'd*, 207 F.3d 264 (5th Cir. 2000) (holding that the employees were not paid on a salary basis because "they are paid a daily rate, and their weekly salary is computed by multiplying the number of days worked by their daily wage"); *Keen v. DXP Enterprises, Inc.*, No. 5:15-CV-137-OLG, 2016 U.S. Dist. LEXIS 81069, 2016 WL 3253895, at *5 (W.D. Tex. June 6, 2016) (granting summary judgment to the employee as to exemption because a day rate "is not pay on a salary basis as is required to maintain the administrative exemption"); *Cunningham*, 2005 WL 1123634, at *3 (stating that an employee who is "paid per day of work. . . does not fit the definition of a salaried employee."); *accord Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011) (observing that "day rate" scheme clearly violated the FLSA and entitled the plaintiffs to overtime pay and liquidated damages under the law).

Here, there is no doubt that Helix paid Mr. Hewitt based on the number of days worked in the week.  Mr. Butler, Project Manager for Helix, agreed that Mr. Hewitt's pay varied on the days worked in a workweek:

> Q.    If he worked one day a week, he would just receive one pay rate—he would receive one day rate, correct?
> A.    If he worked two days a week, he would get two day rates?
> A.    Correct.
> Q.    Three is three day rates, four is four day rates, five is five day rates, all the way up to  seven, which is seven day rates?
> A.    Yes.

(Ex. B at 25-11).  Mr. Hewitt's pay records conclusively corroborate this testimony.[19]

---

[19] Ex. A-4 at Helix 129 (pay for one day at one day rate); A-4 at Helix 95 (pay for two days at two day rates); A-4 at Helix 127 (pay for three days at three day rates); A-4 at Helix 147 (pay for four days at four

**E.      A "salary" can be computed on a daily basis, but it still requires a weekly guarantee**

Under "limited circumstances," payments calculated on a daily rate can qualify as a "salary."

<span style="color:#8B0000">**<u>Can payments computed or calculated on an hourly rate, day rate or shift rate ever qualify as a salary?</u>**</span>

Yes, under limited circumstances. However, the employment arrangement must first include a guarantee of at least the minimum weekly required amount of at least $455 per week, **paid on a salary basis**, regardless of the number of hours, days or shifts worked. In addition, a reasonable relationship must exist between the guaranteed amount and the amount actually earned.

(Department of Labor eLaws—FLSA Overtime Security Advisor) (emphasis in original by DOL).[20]

The two requirements referenced by the DOL in its online "Advisor"—the "limited circumstances" in which a day rate can qualify as a salary—are contained in Section 541.604(b) :

An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, *if* [1] *the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and [2] a reasonable relationship exists between the guaranteed amount and the amount actually earned*. The reasonable relationship test will be met if the *weekly guarantee* is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, if the weekly salary level is $913, an exempt employee guaranteed compensation of at least $1,000 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $300 per shift without violating the salary basis requirement. The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary per week that

---

day rates); A-4 at Helix 160 (pay for five days at five day rates and seven days at seven day rates); A-4 at Helix 133 (pay for six days at six day rates).

[20] Available at http://webapps.dol.gov/elaws/whd/flsa/overtime/cr2.htm#5.

exceeds the current salary level who also receives a commission of one-half percent of all sales in the store or five percent of the store's profits, which in some weeks may total as much as, or even more than, the guaranteed salary.

29 C.F.R. § 541.604(b) (emphasis added).

As the regulation makes clear, the operative requirement for an employee compensated on a daily basis to qualify as salaried is a *weekly* guarantee, not a *daily* guarantee. A day rate without a guaranteed weekly minimum has never been a salary. *See, e.g.*, *Keen*, 2016 U.S. Dist. LEXIS 81069, at *13-17 (holding that evidence that employees "would get paid for the days they worked" did not meet the weekly guarantee standard of 29 C.F.R. § 541.604(b)). For more than 70 years, the Department of Labor has made it clear that the "distinction between payment on a salary and payment on [a] daily basis is that the employee paid on a salary basis is guaranteed a minimum [amount] for any work performed in the period [which must be at least a week] on which the salary is based." *Dept. of Labor Op. Ltr. FLSA*-723 (Dec. 7, 1940); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, Fair Labor Standards Act (July 9, 2003), 2003 DOLWH LEXIS 3, 2003 WL 23374601, at *4-5 ("Payment on hourly basis without an operative salary guarantee does not qualify as a 'salary basis' of payment within the meaning of the regulations.").[21]

### F.    Helix presented no evidence of a *weekly* guarantee

As the Sixth Circuit recently affirmed just a few months ago in *Hughes v. Gulf Interstate Field Servs.*, "the threshold question of whether there was a guarantee. . . matters for determining whether employees whose pay was at least arguably calculated on a daily basis qualified as exempt." 878 F.3d at 183, 190 (6th Cir. 2017). "[W]hether one looks to the phrase 'includes a guarantee,' 29 C.F.R. § 541.604(b), or to the phrase 'which amount is not subject to reduction,' 29

---

[21] The distinction is highlighted by the FLSA's inclusion of an express exception to the salary basis test for certain day-rate workers in the "movie picture producing industry." 29 C.F.R. § 541.709. This exception would be unnecessary if payment on a day rate alone were sufficient to meet the salary basis test.

C.F.R. § 541.602(a), it is legally significant whether [the employee's] *weekly* salary was a matter of right or a matter of grace." *Id.*   at 191 (emphasis added).

All of the evidence here shows that there was no "weekly" guarantee.  Helix's own witnesses termed Mr. Hewitt's pay as "a daily rate, a daily salary" or "salary day rate."[22]  The testimony and pay records show that his pay varied depending on the days worked.

Further, the daily rate Mr. Hewitt received was always a matter of grace.  While Mr. Hewitt always received $455 per day, it had been reduced throughout his employment.[23]  There was no guarantee of a weekly day rate at any sum, and was based entirely on Helix's judgment:

> Q.    No, I'm suggesting that—well, I'm suggesting that the company can pay a different day rate depending—for whatever reason it wants.  These are at-will employees, correct?
> A.    To my knowledge, yes, sir.
> Q.    Yeah, and sometimes business necessity demands a decrease in the individual daily rate, correct?
> A.    Correct.
> Q.    And sometimes competition and the laws of economics demand an increase in the day rate, depending on the supply and demand of the various positions needed, correct?
> A.    Correct.
> Q.    So day rates can go up and they can go down to the various individuals employed at Helix who earn a day rate, right?
> A.    Yes.

(Ex. B at 36:9-37:1).  Mr. McNeal, HR Director testified that decisions to make about day rates are entirely within the discretion of the "senior vice president of Well Ops" after discussion with the "COO" and that they could "lower day rates without a justification."[24]

---

[22] Ex. B at 20:13-15; Ex. C at 12:6-8.

[23] Ex. B at 23:20-25 ("Q. It's a lot of offer letter.  The pay rate is listed as $1,341 daily, right? A. Yes, sir. Q. Later on that was reduced I guess for a lot of Helix employees, correct? A. Yes, we reduced pay across the board").

[24] Ex. C at 33:3-21.  If Helix argues it was a guarantee, then (a) there is no evidence of this, and (b) there is no evidence of a "reasonable relationship" between the alleged guaranteed and the amount actually earned as required legally.  29 C.F.R. § 541.604(b).  Mr. Hewitt earned potentially over ten times the alleged guarantee.  By contrast, in the DOL example, the employee is guaranteed $1,000, regularly works four or

Accordingly, because Helix did not pay Mr. Hewitt a salary, Helix fails on its affirmative defense that it properly classified him as exempt from the FLSA's overtime requirements. Summary judgment against Helix's affirmative defense that Mr. Hewitt was exempt from the overtime requirements of the FLSA should be granted.

## V.    HELIX'S MISCLASSIFICATION AS A MATTER OF LAW DOOMS ITS "GOOD FAITH" DEFENSE

Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also "shall be liable … an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  While an employer may try to avoid liquidated damages by showing its FLSA violation was in "good faith," that is a standard that is extremely difficult to satisfy.   As the Fifth Circuit has put it, "[a]n employer 'faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.'" *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).

For example, in *Bolick v. Mgmt. by Skylane, LLC*, the court considered whether the defendant had produced sufficient evidence to support a § 260 good faith defense.  Civ. A. No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct. 14, 2008) (Smith, J).   The defendant produced evidence that an executive was not aware of FLSA requirements, sought legal counsel when it created payroll policies, and "always clearly notified its exempt employees that they were paid a specified weekly wage for all hours worked in each workweek, regardless of the number of hours worked." *Id*.  at *1.  The executive also testified that the defendant "has always endeavored to comply with the terms of all applicable state and federal laws, including the [FLSA]." *Id*.   The

---

five shifts, and receives $300 per shift (i.e., 1.2 to 1.5 times the guaranteed $1,000).  http://webapps.dol.gov/elaws/whd/flsa/overtime/cr2.htm#5.

court still found that the defendant had failed to produce sufficient evidence to withstand summary judgment because there was "no evidence of any specific ongoing efforts by defendant to comply with the FLSA." *Id*.

The evidence here against Helix is devastating.  Mr. McNeal, the Director of Human Resources for Helix, testified as follows:

> Q.    All right.  To your knowledge, why are toolpushers not eligible for overtime at Helix?
> A.    Because they are in a supervisory role.
> Q.    Okay.  Anything else?
> A.    No sir.

(Ex. C at 18:19-23).  This is game, set, and match on any "good faith" defense.  As explained above, the duties test (which is what Mr. McNeal means by "supervisory role") is only one element of the exemptions.  The others are the "salary-level test" and the "salary-basis test."  29 C.F.R. § 541.200  (administrative  exemption);  29  C.F.R.  §  541.601  (highly  compensated  employee exemption).  Helix did not consider the other elements of the applicable exemptions.  To base an exemption on only one element without considering the others is not "good faith" and Helix is unable to meet its burden of proving "good faith."

In short, Helix has no evidence remotely as strong as the employer in *Bolick* that their violations of the FLSA's basic "time and one-half" overtime rule was in "good faith."  The fact is that the rule Helix violated is so basic that its violation could not have been in "good faith."  *See, e.g.*, *Mumby*, 636 F.3d at 1268 (observing that a "day rate" scheme clearly violated the FLSA and entitled the plaintiffs to overtime pay and liquidated damages under the law); *Riddle v. Tex-Fin, Inc.*, Civil Action No. H–08–31212011, WL 1103033, at *4 (S.D. Tex. Mar. 22, 2011) (awarding liquidated damages in FLSA case even where the jury did not find the violation to be willful); *Tran v. Thai*, NO. CIV.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010) (granting

summary judgment for the plaintiff in an FLSA case on the question of "good faith," stating "though the defendants conducted internet research once to determine whether a receptionist was covered by the FLSA and were unsure as to whether they had sufficient gross revenue to be an employer under the FLSA, the defendants have identified no evidence of any specific and ongoing efforts to comply with the FLSA. The plaintiffs are entitled to summary judgment on this defense").

## VI.    <u>CONCLUSION</u>

In order to avail itself of the FLSA's "highly compensated" or "administrative" exemptions, an employer must pay the employee a salary.  In this case, Helix failed to pay Mr. Hewitt a salary, so Mr. Hewitt is entitled to summary judgment on Helix's affirmative defense that it properly classified him as exempt from the overtime pay rule.  Moreover, Helix did not operate in good faith when it classified him as exempt, because the entire analysis conducted by Helix rested on only one element of the exemptions—the duties test—and failed to take into account the salary level and salary basis tests.  Summary judgment is, therefore, appropriate on Helix's affirmative defense that it acted in "good faith" in classifying Mr. Hewitt as exempt.

Respectfully submitted,

OBERTI SULLIVAN LLP

By:    s/ Edwin Sullivan
Edwin Sullivan
State Bar No. 24003024
S.D. Texas ID No. 24524
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3557 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email

ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

Mark J. Oberti
State Bar No. 00789951
S.D. Texas ID No. 17918
OBERTI SULLIVAN LLP
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served on counsel of record, as listed below, via the Southern District of Texas CM/ECF method, on this the 31st day of July 2018.

M. Carter Crow
Kimberly Cheeseman
Jesika Silva Blanco
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
carter.crow@nortonrosefulbright.com
kimberly.cheeseman@nortonrosefulbright.com
jesika.blanco@nortonrosefulbright.com

s/ Edwin Sullivan
Edwin Sullivan