**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. HEWITT, on behalf of himself and others similarly situated,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 4:17-cv-02545** |
| | § | |
| **HELIX ENERGY SOLUTIONS GROUP, INC. AND HELIX WELL OPS, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |
| | § | |

**DEFENDANTS HELIX ENERGY SOLUTION GROUP AND HELIX WELL OPS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendants Helix Energy Solutions Group Inc. and Helix Well Ops, Inc. move for summary judgment.

Dated: July 31, 2018

Respectfully submitted,

*/s/ Carter Crow*

M. Carter Crow
State Bar No. 05156500
Federal I.D. No. 15048

NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: carter.crow@nortonrosefulbright.com

*Attorney-in-Charge for Defendants*

OF COUNSEL:

Kimberly Cheeseman
State Bar No. 24082809
Federal I.D. No. 2254668
E-mail: kimberly.cheeseman@nortonrosefulbright.com

Jesika Silva Blanco
State Bar No. 24098428
Federal I.D. No. 2780677
E-mail: jesika.blanco@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: 713.651.5112
Facsimile: 713.651.5246

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ..... 1
II. STATEMENT OF ISSUES AND STANDARD OF REVIEW ..... 1
III. SUMMARY OF THE ARGUMENT ..... 2
IV. RELEVANT FACTS ..... 3
A. The Nature of Helix's Business ..... 3
B. Helix Highly Compensates Toolpushers Because of the Importance of their Job Duties ..... 3
C. Michael Hewitt's Employment and Compensation ..... 4
V. ARGUMENT & AUTHORITIES ..... 6
A. Hewitt Was Exempt From the FLSA's Overtime Requirements ..... 6
1. Hewitt Was Paid on a Salary Basis ..... 6
2. Hewitt Satisfies the Duties Prong of the Executive Exemption ..... 11
3. Hewitt Is Exempt Under the Highly Compensated Exemption ..... 11
B. Hewitt Cannot Establish Willfulness ..... 12
VI. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auer v. Robbins*,
519 U.S. 452 (1997)....6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....1

*Elliott v. Dril-Quip, Inc.*,
No. CV H-14-1743, 2015 WL 7302764 (S.D. Tex. Nov. 18, 2015)....7

*Faludi v. US Shale Solution LLC*,
No. H-16-3467, 2017 WL 5969261, at *1 (S.D. Tex. November 30, 2017)....7, 8, 10

*Mackey v. Owens*,
182 F.3d 915 (5th Cir. 1999)....13

*McLaughlin v. Richland Shoe*,
486 U.S. 128 (1988)....12, 13

*RSR Corp. v. Int'l Ins. Co.*,
612 F.3d 851 (5th Cir. 2010)....13

*Swartz v. DJ Eng'g, Inc.*,
No. 12-CV-01029-DDC-KGG, 2015 WL 4139376 (D. Kan. July 9, 2015)....10

*Williams v. Vynckier Enclosure Sys., Inc.*,
No. CIV.A. H-04-3223, 2005 WL 2810709 (S.D. Tex. Oct. 27, 2005)....7

*Yuen v. U.S. Asia Commercial Dev. Corp.*,
974 F. Supp. 515 (E.D. Va. 1997)....9

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
605 F. App'x. 349 (5th Cir. 2015)....2, 6, 12, 13

**Rules and Statutes**

29 U.S.C. § 213(a)(1)....6

29 U.S.C. § 255(a)....12

Fair Labor Standards Act....4

Fair Labor STandards Act,
29 U.S.C. §§ 207, 211....1, 9, 11, 12

**Other Authorities**

29 C.F.R..§ 541.100(a)(1)....11

29 C.F.R. §§ 541.100(a)(1), 541.601(b)(1)....6

29 C.F.R. § 541.301(b)(3)....6

29 C.F.R. §§ 541.600, 541.601....2, 7

29 C.F.R. § 541.601....2, 7, 12

29 C.F.R. §§ 541.602 and 541.604....6, 7

29 C.F.R. § 541.603....10

29 C.F.R. § 602(a)....7, 10

**EXHIBIT LIST**

Exhibit A: Declaration of Kenric McNeal

Exhibit B: Deposition of Brian Butler

Exhibit C: Deposition of Plaintiff Michael Hewitt

- Exhibit C-1: Toolpusher Job Description
- Exhibit C-2: Hewitt's Personnel Appraisals
- Exhibit C-3: Hewitt's Application for Employment
- Exhibit C-4: Hewitt's Offer Letter
- Exhibit C-5: Hewitt's Termination Letter
- Exhibit C-6: Hewitt's Compensation Summary
- Exhibit C-7: Hewitt's Paystubs
- Exhibit C-8: Wage Deduction Authorization

Exhibit D: Deposition of Kenric McNeal

Exhibit E: Hewitt's W-2s

Exhibit F: June 20, 2018 Email

Exhibit G: Hewitt's Objections and Responses to Defendant's First Request for Production of Documents.

## I. NATURE AND STAGE OF PROCEEDINGS

Plaintiff Michael J. Hewitt ("Hewitt") alleges that Defendants Helix Energy Solutions Group, Inc. and Helix Well Ops, Inc. ("Defendants" or "Helix"), misclassified his job position (Toolpusher) as exempt and improperly paid him a day rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 211. In the interest of judicial economy, the Parties stipulated to conditional certification. During the opt-in period, only one other individual, David Dugas ("Dugas"), joined the putative class.

Opt-in Plaintiff Dugas was unresponsive to his counsel and failed to respond to Helix's written discovery and requests to take his deposition. As a result, on May 31, 2018, counsel for Dugas filed an Unopposed Motion to Withdraw as Counsel, which this Court granted. Since then, Dugas has not obtained substitute counsel, nor has Dugas appeared pro se.

On July 1, 2018, the discovery period closed, and on July 16, 2018, Helix moved to dismiss Opt-in Plaintiff Dugas as a plaintiff in this case for failure to prosecute his alleged claim. Plaintiff Hewitt did not oppose the motion. Helix's Motion to Dismiss is currently pending before the Court. Because Dugas has abandoned his claim and failed to participate in the case, this Motion for Summary Judgment focuses on the claims of Hewitt only.

Helix denies all allegations and asserts that Hewitt was exempt from the FLSA's overtime requirements, under both the executive and highly compensated exemptions. Helix now moves for summary judgment on all claims.

## II. STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issue presented is whether Helix is entitled to summary judgment on Hewitt's claim for overtime compensation. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine dispute as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-24 (1986). Summary judgment is warranted here because the undisputed facts demonstrate that Hewitt satisfies the requirements of the executive or the highly compensated exemptions. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x. 349, 351 (5th Cir. 2015).

## III. SUMMARY OF THE ARGUMENT

Whether an employee is exempt under either exemption is a two-part test: a duties test and salary basis test. As a Toolpusher, Hewitt supervised and managed Helix's Driller, Drill Crew, and Crane Crew. Tellingly, Hewitt has stipulated to and does not dispute that he satisfies the duties requirements for the executive exemption and highly compensated exemptions.[1] Therefore, the only remaining issue for the Court to decide is whether Hewitt's compensation satisfied the salary basis test.

To qualify under the salary basis test, the DOL regulations state that an employee must be "compensated on a salary or fee basis at a rate of not less than $455.00 per week." 29 C.F.R. §§ 541.600, 541.601. Helix satisfied this test. In any week in which Hewitt worked for Helix, Helix guaranteed $900 or more—well in excess of the required $455 threshold. In addition, Helix never made any improper deductions to Hewitt's pay. Hewitt always earned more than $100,000 annually. In fact, Hewitt earned over $200,000 in every year that he worked for Helix. Accordingly, as more fully set forth below, summary judgment is appropriate.

[1] To satisfy the duties requirement of the highly compensated exemption, an employee must "customarily and regularly" perform any **one** of the exempt duties or responsibilities of an executive, administrative, or professional employee. 29 C.F.R. § 541.601. Since Hewitt does not dispute that he meets the duties requirements for the executive exemption, he also does not dispute that he meets the duties requirements of the highly compensated exemption.

## IV. RELEVANT FACTS

### A. The Nature of Helix's Business

Helix provides, among other things, rigless offshore well intervention services using specialized well intervention vessels. Declaration of Kenric McNeal at ¶ 3, attached as Ex. A (hereinafter "McNeal Dec. at __"). Hewitt worked as a Toolpusher on the *Q4000* and *Q5000* vessels, which are semisubmersible vessels that conduct well intervention in water depths of up to 10,000 feet. *Id.* at ¶ 4. Because Helix's specialized vessels are rigless, no actual drilling occurs. Deposition of Brian Butler at 13:2-11, attached as Ex. B (hereinafter "Butler Depo. at __).

### B. Helix Highly Compensates Toolpushers Because of the Importance of their Job Duties

Helix's well intervention vessels each have a marine crew, individuals who keep the vessel working, and a project crew, individuals who run the commercial operations of the vessel. *Id*. at 15:8-16:2. The Toolpusher is on the project side, supervising the work of the Driller, Drill Crew, and Crane Crew. Deposition of Michael Hewitt at 45:16-21, attached as Ex. C (hereinafter "Hewitt Depo. at __). Typically, the Drill Crew consists of seven employees, and the Crane Crew consists of five employees. *Id.* at 46:5-15. In total, the Toolpusher regularly and customarily supervises approximately twelve to thirteen Helix employees on any given shift. *Id.* As part of the Toolpusher's supervisory duties, the Toolpusher is responsible for completing personnel evaluation forms at the end of each hitch for his crew members. *Id.* at 45:22-46:10; Ex. C-2 (Personnel Appraisals).

The Toolpusher's duties are primarily non-manual. Butler Depo. at 29:10-23. Because the Toolpusher's "primary task is the direction of others," the Toolpusher is the individual in charge of directing, guiding, and overseeing all aspects of the Drill Crew and Crane Crew as they

execute the well intervention plan. *See, e.g.*, Hewitt Depo. at 44:18-45:4; Butler Depo. at 29:10-23; Ex. C-1 (Toolpusher Job Description).

Because of the importance of these duties, Helix pays Toolpushers over $200,000 annually, and they always receive well in excess of $455 in any week worked. McNeal Dec. at ¶ 5. In particular, Helix pays Toolpushers a predetermined daily sum that remains constant regardless of the hours worked in a day or the quality of the work performed. *Id.* at ¶ 6. Toolpushers typically work 28 days for six hitches per year, and they are paid on a biweekly basis. Butler Depo. at 26:4-12; McNeal Dec. at ¶¶ 7,8.

**C. <u>Michael Hewitt's Employment and Compensation</u>**

Hewitt began working for Helix as a Toolpusher in December 2014.[2] Ex. C-4 (Hewitt's Offer Letter). Upon hire, Helix informed Hewitt that the Toolpusher position was exempt, and Hewitt understood that he would not be receiving overtime compensation. Hewitt Depo. at 34:8-24 ("Q. And if you look at the second page, probably in the middle, it says, 'Your position as a tool pusher – tool pusher is an exempt position, and is therefore not eligible for overtime compensation, as defined under the Fair Labor Standards Act.' Do you see that?" A. Yes. . . . Q. And, so, when you signed this letter, you understood that the position, you would not be receiving overtime compensation; correct? A. Yes.").

During his employment, Hewitt was paid a salary calculated on a daily basis. Butler Depo. at 20:13-15; *see also* Deposition of Kenric McNeal at 12:6-8, attached as Ex. D (hereinafter "McNeal Depo. at __). Helix's self-service Human Resources portal listed Hewitt's compensation as a salary. Ex. C-6 (Hewitt's Compensation Summary). Notably, Hewitt was

[2] During his employment, Hewitt would also sometime cover as the Superintendent. Hewitt Depo. at 43:21-23. When Hewitt covered as a Superintendent he was paid a daily rate of $1,912.32. Ex. C-7 at 103, 105, 107.

always paid more than $900 daily. Hewitt Depo. at 40:14-18. Hewitt's pay stubs expressly state "Base Salary" and then explain that the salary calculation was on a daily basis:

| BASE SALARY |
| --- |
| 1,341.00/Daily |

Ex. C-7 (Hewitt's Paystubs). Specifically, Hewitt was paid daily rates of $1,341, $1,220, $963, and $1,171. *Id.* The change in daily rate occurred with the decline in the oil and gas market when Helix cut salaries across the board. McNeal Dec. ¶ 9. Because of Hewitt's daily rate, in any week worked, Hewitt always received more than $455 in any week. Hewitt Depo. at 34:4-7; 40:2-13; 64:15-16.

Hewitt's daily rate stayed constant regardless of the number of hours he worked in the day and the quality of the work he performed. *Id.* at 43:9-13, 44:14-17. Hewitt admits as much:

> Q. So, then, you would agree with me that Helix never reduced your pay based on the quality of your work; correct?
>
> A. Correct. They did not reduce my pay on quality of work.
>
> . . . .
>
> Q. So you would agree with me that regardless of how many hours you were working, your pay was always this daily rate; correct?
>
> A. Yes.

*Id*. at 43:9-13; 44:14-17; *see also* McNeal Depo. at 43:16-44:8.

No deductions based on the quality or quantity of work were ever taken from his pay. Hewitt Depo. at 43:9-13, 44:14-17. In each complete year Hewitt worked, he made over $200,000. Ex. E (Hewitt W-2). He earned $248,053 in 2015 and $218,863.73 in 2016. In the eight months he worked in 2017, he earned, $143,680.96, which even absent bonus opportunities, exceeds $200,000 on an annualized basis.

Helix ultimately terminated Hewitt in August 2017 for performance issues. Ex. C-5; Hewitt Depo. at 51:2-5. During his employment, Hewitt never complained to Helix that he felt like he was entitled to overtime. *Id.* at 36:10-13 ("Q. During the December 2014 through August 2017 time period, when you worked at Helix, you never contacted HR because you felt like, 'Hey, I should be receiving overtime'? A. No."). In fact, at no point during his employment did Hewitt even ***believe*** that he should have been receiving overtime. *See id.* at 55:3-9 ("Q. From December of 2014 until . . . -- August the 30th, the very last day you were terminated, before you ever spoke to any counsel, did you feel like you were owed overtime, as a tool pusher? A. Not until I received legal representation."). Tellingly, on June 20, 2018, Hewitt e-mailed Helix and requested that the Company to hire him back as a Toolpusher. Ex. F.

## V. ARGUMENT & AUTHORITIES

### A. Hewitt Was Exempt From the FLSA's Overtime Requirements

Workers employed in a bona fide executive, administrative, or professional capacity are exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). Similarly, highly compensated employees who perform at least one of the duties of an executive, administrative, or professional employee are also exempt from overtime. 29 C.F.R. § 541.301(b)(3). The executive and highly compensated exemptions each have a "salary" test and a "duties" test. *See Zannikos*, 605 F. App'x. at 352-60. Based on the undisputed evidence, Hewitt satisfies both the salary and duties requirements for both the executive and highly compensated exemptions.

#### 1. Hewitt Was Paid on a Salary Basis

To qualify for the executive or highly compensated exemption, an employee must be paid on a salary basis. 29 C.F.R. §§ 541.100(a)(1), 541.601(b)(1). The salary-basis test is a creation of the Department of Labor in its regulations. 29 C.F.R. §§ 541.602 and 541.604; *see Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (explaining that "the salary-basis test is a creature of the

Secretary's own regulations"). The relevant regulations state that an employee must be "compensated on a salary or fee basis at a rate of not less than $455.00 per week." 29 C.F.R. §§ 541.600, 541.601. Two sections provide further explanation of what it means to be paid on a salary basis—Section 541.602(a) and 541.604(b). Section 541.602(a) provides that:

> An employee will be considered to be paid on a "salary basis" within the meaning of the regulations if the employee ***regularly receives*** each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work.

29 C.F.R. § 602(a) (emphasis added). In addition, exempt employees need not be paid for any workweek in which they perform no work. *Id.*

#### a) Hewitt Regularly Received Over $455 in Any Week That He Worked

Hewitt testified that in any week that he worked, he always received more than $455 a week, and that he was paid on a bi-weekly basis. Hewitt Depo. at 34:4-7; 40:2-13; 64:15-16. At all relevant times, Hewitt's guaranteed rate of pay was more than double the required $455 weekly amount. Ex. C-7 (indicating that Hewitt was paid daily rates of $1,341, $1,220, $963, and $1171). For any day that Hewitt worked, his daily rate would remain unchanged regardless of the amount of hours worked in the day or the quality of the work performed.[3] Hewitt Depo. at 40:14-18, 43:9-13, 44:14-17; Ex. C-7.

In a recent opinion by another court within the Southern District, Judge Sim Lake found the salary basis-test to be satisfied under factually analogous circumstances. In *Faludi v. US*

[3] To the extent Hewitt argues that he was not guaranteed at least $455 for any week that he worked because his employment was at-will, that argument is without merit. This argument would preclude a summary judgment finding for any exempt at-will employee, a plainly incorrect conclusion. *See Elliott v. Dril-Quip, Inc.*, No. CV H-14-1743, 2015 WL 7302764, at *6, *12 (S.D. Tex. Nov. 18, 2015) (concluding that an at-will plaintiff was paid on a salary basis); *Williams v. Vynckier Enclosure Sys., Inc.*, No. CIV.A. H-04-3223, 2005 WL 2810709, at *7, *10, *11 (S.D. Tex. Oct. 27, 2005) (holding that an at-will plaintiff satisfied the requirements of the salary basis test). The fact that Helix had the power to change Hewitt's daily rate has no bearing on the analysis. Simply put, there is no evidence that Hewitt ever had a compensation structure paying him less than $455 for any week worked, and no evidence that Hewitt was ever paid less than $455 for any week worked.

*Shale Solution LLC*, the plaintiff was paid $1,000 for each day he performed services in Houston and $1,350 for each day he performed services outside of Houston. No. H-16-3467, 2017 WL 5969261, at *1 (S.D. Tex. November 30, 2017). The court held that the salary-basis test was satisfied because the plaintiff was guaranteed at least $1,000 per day if he showed up for work and performed the agreed upon services. *Id.* at *10.

Similar to *Faludi*, Hewitt was guaranteed at minimum $900 for any day if he "showed up for work and performed the agreed upon services." 2017 WL 5969261, at *10; *see also* Hewitt Depo at 40:14-18; Ex. C-7. Based on the undisputed evidence, Hewitt satisfies the salary-basis test.

**b) No Improper Deductions Were Made to Hewitt's Pay**

Helix anticipates that Hewitt will attempt to argue the salary basis test is not met here because of the theoretical possibility of deductions. However, Hewitt himself testified that ***no deductions*** were ever made to his pay based on the quantity of his work or the quality of his work. Hewitt Depo. at 43:9-13, 44:14-17.

To the extent Hewitt argues that his pay was subject to improper deductions based on the quality of his work, that argument lacks merit as well. Hewitt's testimony in response to his own counsel's examination clearly demonstrates that Hewitt's pay was never reduced due to the quality of his work. *Id.* at 59:24-60:6 ("Q. Mr. Hewitt, you had answered a question of Ms. Cheeseman, where she asked you if your pay had ever been reduced or deducted based on the quality of your work. Do you remember that question? A. Yes. Q. And you answered that question honestly, which the answer for that question for you is no. A. Correct.").

For support of a supposed deduction practice, Hewitt points to a "wage deduction authorization form." However, Helix's wage deduction authorization form does not demonstrate that Hewitt was subject to improper deductions based on the quality of his work. Specifically,

Hewitt's wage deduction form authorizes Helix to deduct money from an employee's pay based on "[c]harges incurred by me or the company that are the result of negligence on my part." Ex. C-8. Kenric McNeal ("McNeal"), Director of Human Resources for Helix, and Brian Butler ("Butler"), Senior Project Manager for Helix, both testified that this provision of the wage deduction form was directed toward a situation where for example an individual had wrecked a rental car because they were drinking, or trashed a rented hotel room. McNeal Depo. at 41:21-42:4; Butler Depo. at 45:7-13, 49:17-50:1. In addition, both McNeal and Butler testified that in their experience with Helix, they have ***never*** once seen a deduction made based on this provision. McNeal Depo. at 41:12-16; Butler Depo. at 46:11-13.

There are two reasons why this wage deduction authorization form does not impact the salary basis analysis for Hewitt. First, the listed deduction is not a deduction based on the quality or quantity of the work Hewitt performed. McNeal and Butler testified that the deduction policy was targeted at a situation where for example an individual had wrecked a rental car or trashed a rented hotel room. McNeal Depo. at 41:21-42:4; Butler Depo. at 45:7-13, 49:17-50:1. These situations are not related to the quality or quantity of the Hewitt's work as a Toolpusher. Of note, Hewitt performs all of his work duties on the Helix's vessel, and both of these cited circumstances would have to occur off-vessel. Hewitt satisfies the salary basis test because the listed deduction is wholly unrelated to Hewitt's duties as a Toolpusher. *See Yuen v. U.S. Asia Commercial Dev. Corp.*, 974 F. Supp. 515, 524 (E.D. Va. 1997) ("[N]either FLSA, its implementing regulations, nor cases interpreting the 'no disciplinary deduction' rule support a prohibition of deductions wholly unrelated to the 'quality or quantity' of work.")

Second, even if the deduction policy was improper, Hewitt testified that no deduction was ever made from his pay on this basis. Hewitt Depo. at 59:24-60:6. Furthermore, McNeal

and Butler testified that the policy had never been used as a basis for the deducting pay from an employee. McNeal Depo. at 41:12-16; Butler Depo. at 46:11-13. For Helix to lose the exemption, the record must demonstrate that Helix had an ***actual*** practice of making improper deductions. 29 C.F.R. § 541.603 ("If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost **during the time period in which the improper deductions were made**"). The regulations list the factors to consider when determining whether an employer has an actual practice[4] of making improper deductions:

> the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

*Id.* Here, the undisputed record demonstrates that no improper deductions were ever made. Even if this policy articulated the potential for an improper deduction (which it does not), Helix does not lose the exemption.

Moreover, to the extent that Hewitt argues that lack of payment on days in which he did not work evidences an improper deduction, that argument is without merit. Under the applicable regulation, "[e]xempt employees need not be paid for any workweek in which they perform no work." 29 C.F.R. § 602(a). If Hewitt failed to work a single day in a week, he was not entitled to any additional pay. *Id.* at § 602(c). It is undisputed that for any week that Hewitt performed any duties for Helix, he was paid in excess of $455. Hewitt Depo. at 40:2-18. The analysis in *Faludi* demonstrates that Hewitt's compensation structure satisfies the salary basis test.

[4] To the extent Hewitt seeks to argue that Helix loses the exemption by maintaining a policy that clearly communicated a "significant likelihood" of deduction, that argument fails. The revised regulations eliminated the "significant likelihood" test, and this theory no longer states the governing law. *Swartz v. DJ Eng'g, Inc.*, No. 12-CV-01029-DDC-KGG, 2015 WL 4139376, at *14 (D. Kan. July 9, 2015)

**2. Hewitt Satisfies the Duties Prong of the Executive Exemption**

For an employee to be exempt under the executive exemption, their primary duty must be the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof. 29 C.F.R. § 541.100(a)(1). The employee must customarily and regularly direct the work of two or more employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. *Id.* at § 541.100. Hewitt does not dispute that he satisfies the duties prong of the executive exemption, and the undisputed record also affirms that Hewitt was an exempt executive employee.

Hewitt agrees that his job duties meet the duties prong of the executive exemption. In response to Helix's Request for Production Nos. 7-9 Hewitt stated:

> Plaintiff objects that this request is not reasonably calculated to lead to the discovery of admissible evidence because **he does not dispute that his job duties meet the duties test of the executive exemption** to the FLSA.

Ex. G (Hewitt's Responses to Defendant's First Request for Production) (emphasis added). Hewitt's counsel reiterated this position in Hewitt's deposition. Hewitt Depo. at 49:12-16.

The undisputed record also shows that Hewitt was an exempt executive employee. Hewitt was in charge of overseeing all aspects of the Driller, Drill Crew, and Crane Crew as they execute well operations. *Id.* at 44:18-45:4; Ex. C-1 (Toolpusher Job Description). On any given shift, Hewitt was supervising between thirteen and fourteen employees. *Id.* at 46:5-15. Pursuant to his supervisory duties, Hewitt also filled out personnel evaluations at the end of each hitch that were used by Helix in making employment decisions. *See id.* at 45:22-46:10; Ex. C-2.

**3. Hewitt Is Exempt Under the Highly Compensated Exemption**

The summary judgment record shows that Hewitt is also exempt under the highly compensated exemption. An employee who earns a total annual compensation of at least

$100,000 performing office or non-manual work is deemed exempt from the FLSA's minimum wage and overtime requirements if he "customarily and regularly" performs any **one** of the exempt duties or responsibilities of an executive, administrative, or professional employee. 29 C.F.R. § 541.601. The employee does not need to meet all of the requirements of the executive, administrative, or professional employees. *Id.* § 541.601(c). "A high level of compensation **is a strong indicator** of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.* (emphasis added).

The undisputed evidence shows that Hewitt earned well over $100,000 each year during the relevant period. Ex. E. Therefore, as recognized in the federal regulations, Hewitt's high level of compensation is a strong indicator of his exempt status. *See also Zannikos*, 605 F. App'x at 353 (affirming decision that plaintiff was exempt as highly compensated when he earned just eight cents over the $100,000 threshold). The duties analysis here is straightforward because Hewitt does not dispute that his duties satisfy the requirements of the executive exemption. Hewitt Depo. at 49:12-16; Ex. F.

In addition to Hewitt's stipulation, the factual record also clearly demonstrates that Hewitt is exempt under the highly compensated exemption. Hewitt's duties were primarily non-manual. Butler Depo. at 29:10-23. Hewitt also clearly supervised two or more employees. Hewitt Depo. at 44:18-45:4, 45:22-46:10; Ex. C-2.

### B. Hewitt Cannot Establish Willfulness

Any claim for damages under the FLSA is limited to two years unless the plaintiff can establish a willful violation in which case recovery includes a third year. 29 U.S.C. § 255(a). Hewitt bears the burden to establish that Helix's conduct was a willful violation of the FLSA. *See Zannikos*, 605 F. App'x at 360.

To establish willfulness, Hewitt must prove that Helix had actual knowledge it was violating the FLSA or showed reckless disregard as to whether it was committing the alleged violations. *Zannikos*, 605 F. App'x at 349; *see also McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988). As the U.S. Supreme Court has explained, "the willfulness standard is a formidable one because the FLSA's two-tiered statute of limitations 'makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin*, 486 U.S. at 133 (emphasis added). Negligence or even unreasonableness is insufficient to establish willfulness. *Zannikos*, 605 F. App'x at 349.

Hewitt provides no evidence to support a finding of willfulness. In his complaint, Hewitt concludes, without support, that Helix's violation was willful. Doc. 1 at ¶ 26. This conclusory statement is simply not enough. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."); *Mackey v. Owens*, 182 F.3d 915 (5th Cir. 1999) ("Conjecture alone is insufficient to defeat summary judgment.").

## VI. CONCLUSION

At all relevant times, Hewitt was an exempt employee under the executive and/or highly compensated exemptions. Accordingly, Defendants Helix Energy Solutions Group, Inc. and Helix Well Ops, Inc. respectfully request that the Court grant their motion for summary judgment. Defendants request all further relief to which they are justly entitled.

Dated: July 31, 2018

Respectfully submitted,

*/s/ Carter Crow*

M. Carter Crow
State Bar No. 05156500
Federal I.D. No. 15048

NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: carter.crow@nortonrosefulbright.com

*Attorney-in-Charge for Defendants*

OF COUNSEL:

Kimberly Cheeseman
State Bar No. 24082809
Federal I.D. No. 2254668
E-mail: kimberly.cheeseman@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: 713.651.5218
Facsimile: 713.651.5246

Jesika Silva Blanco
State Bar No. 24098428
Federal I.D. No. 2780677
E-mail: jesika.blanco@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: 713.651.5112
Facsimile: 713.651.5246

**CERTIFICATE OF SERVICE**

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on July 31, 2018.

**Last known address of David Dugas per Doc. 25:**
David M. Dugas
133 Briarwood Drive
Huntsville, TX 77320
(936) 900-4039

**Counsel for Named Plaintiff Hewitt:**
Edwin Sullivan
Mark J. Oberti
OBERTI SULLIVAN LLP
712 Main Street, Suite 900
Houston, Texas 77002
Telephone: (713) 401-3557
Fasmicile: (713) 401-3547
ed@osattorneys.com
mark@osattorneys.com

*/s/ Kimberly Cheeseman*
Kimberly F. Cheeseman