UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL J HEWITT, *et al*, § § Plaintiffs, § VS. § HELIX ENERGY SOLUTIONS GROUP, INC, § *et al*, § § Defendants. § | CIVIL ACTION NO. 4:17-CV-2545 |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court are the parties' cross motions for summary judgment. The plaintiff, Michael J. Hewitt (the "plaintiff"), filed a motion for partial summary judgment (Dkt. No. 28), to which the defendants, Helix Energy Solutions Group Inc. and Helix Well Ops (collectively the "defendants") responded (Dkt. No. 31), and the plaintiff replied (Dkt. No. 33). The defendants filed a cross-motion for summary judgment (Dkt No. 29), to which the plaintiff responded (Dkt. No. 30), and the defendants replied (Dkt. No. 32). After having carefully considered the motions, responses, replies, the record and the applicable law, the Court determines that the plaintiff's motion should be **DENIED**, and the defendants' motion should be **GRANTED**.

**II.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

The defendants are an oil and gas services company that provide rigless offshore well intervention services. The defendants use semisubmersible vessels that operate up to 10,000 feet below sea level. Each vessel has a marine crew and a project crew. The marine crew maintains

---

[1] Throughout this section, this Court references exhibits presented in the record, and attachments to the defendants' motion for summary judgment (Dkt. No. 29). Specific references to intervals will not be made.

the vessel in proper working order while the project crew focuses on the operations of the vessel. The highest-ranking member of the project crew is the Superintendent, followed by the Toolpusher. The Toolpusher supervises the work of the Driller, Drill Crew, and Crane Crew. It is customary for the Toolpusher to supervise approximately twelve to thirteen employees during a shift. The Toolpusher is also responsible for completing personnel evaluation forms at the end of each shift. Some of a Toolpusher's other duties entail:

- Overseeing and assisting the Driller in the execution of the program.
- Ensure company programs are carried out safely and effectively.
- Conduct pre-tour meetings with all crews to communicate daily objectives . . . safety precautions and training activities.
- Ensure that the deck crew led by the Crane Operator organizes the checks.

(Dkt. No. 29, Ex. C-1).

The plaintiff worked for the defendants on its vessels as a Toolpusher from December 2014, until August 1, 2017. The plaintiff's offer letter indicated that the defendants would pay him a daily rate of $1,341.00, to be paid on a bi-weekly basis. The plaintiff's daily rate was not based on the quality of his work nor the number of hours that he worked in a given day.[2] Toolpushers generally make 6 offshore trips a year, during those offshore trips they work 28 days. While on a vessel, the plaintiff usually worked twelve-hour shifts from the hours of 6 p.m. to 6 a.m. It is undisputed that he was paid over $200,000 a year while working for the defendants and never made less than $455 in any week that he worked.

The plaintiff filed this instant suit on approximately August 18, 2017, alleging that the defendants misclassified his job position as exempt and improperly paid him a day rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 211. The plaintiff argues that the record proves that he was not paid a salary and instead received a day rate, which would

---

[2] While working as a Toolpusher for the defendant, the plaintiff received day rates of $1,341, $1,220, $963, and $1,171. (Dkt. No. 29, Ex. C-7).

make him a non-exempt employee who is entitled to overtime pay. The defendants deny all allegations and assert that the plaintiff was exempt from the FLSA's overtime requirements, under both the executive and highly compensated exemptions. The plaintiff now moves for a partial summary judgment against the pleaded defenses, while the defendants move for summary judgment on all the plaintiff's claims.

### III. LAW APPLICABLE TO CASE

#### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that

evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

### B. The FLSA and its Exemptions

The FLSA establishes the general rule that all employees must receive overtime compensation for hours worked in excess of forty hours during a seven-day workweek. *See* 29 U.S.C. § 207(a)(1). Employees are entitled to overtime compensation according to the general rule unless their employer proves that one of the many exemptions applies. The defendants assert that, as a Toolpusher, the plaintiff is not entitled to overtime compensation under the general rule because he falls within the executive and highly compensated exceptions. The Fifth Circuit has long held that FLSA exemptions are to be narrowly construed. S*ee Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir. 1988). The employer has the burden of proving that the employee is exempt from the FLSA general rule. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). However, the ultimate decision of whether the plaintiff qualifies for an exemption under the FLSA's overtime requirements is a question of law. *See Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

## IV. ANALYSIS AND DISCUSSION

### A. Salary Basis

The plaintiff's sole contention, and where the Court starts its analysis, is whether the defendants have met their burden of proving that they paid the plaintiff on a salary basis. The FLSA provides that, to qualify as exempt, the employee must, be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week[.]" 29 C.F.R. § 541.200(a)(1). The regulatory definition of "salary basis" establishes a general rule that:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly,

> or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. [Subject to exceptions] an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a). The regulation does provide for exceptions, in which an employer is permitted to take deductions from an employee's pay. *See* 29 C.F.R. § 541.602(b).

The plaintiff argues that he was not paid on a salary basis because his pay "fluctuated" based on the number of days he worked. The plaintiff explained that unlike salaried employees, he was only paid for the days that he worked. The defendants argue that the plaintiff's pay satisfies the salary basis test because the summary judgment evidence shows that the plaintiff always received more than $455 a week, and that he was paid on a bi-weekly basis. The Court finds the plaintiff's argument unavailing. The regulation does not require that the plaintiff be guaranteed to work a prescribed number of days, but instead demands that the plaintiff be paid a predetermined amount, not to fall below $455 during any week in which he works. *See* 29 C.F.R. § 602(a)(1) ("Exempt employees need not be paid for any workweek in which they perform no work."); *see also Valcho v. Dallas County Hosp. Dist.*, 658 F. Supp. 2d 802, 809 (N.D. Tex. 2009) (pay on an hourly basis can satisfy the salary basis test "provided [the employee] was guaranteed the minimum required amount regardless of the number of hours worked"). Although the plaintiff did not work every day that he was on the vessel, the pay he received for the days that he worked never fell below the requisite amount. In fact, the summary judgment record shows that the plaintiff's predetermined daily rate was more than double the required weekly amount, and it remained constant regardless of the quantity or quality of his work. Thus, the Court finds that the plaintiff was paid on a salary basis.

### B. The Executive Exemption

The defendants argue that even if the plaintiff was a non-exempt employee, his job falls within the executive exemption. The FLSA provides that any employee "employed in a bona fide executive [or] administrative . . . capacity" is exempt from the general rule requiring overtime compensation. 29 U.S.C. § 213(a)(1). To qualify as a bona fide executive, the employee must satisfy the following requirements:

(1) The employee is compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;

(2) The employee's primary duty consists of management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(3) The employee's responsibilities include the customary and regular direction of the work of at least two or more other employees.

29 C.F.R. § 541.1(f). To qualify as a bona fide executive employee, the employee's primary duty must be the performance of office or non-manual work directly related to management policies or general business operations of his employer, including work requiring the exercise of discretion and independent judgment. *See* 29 C.F.R. § 541.2. The plaintiff concedes that the defendants satisfy the "duty prong" of both the executive and highly compensated exemption tests (Dkt. No. 28 at 7), and as mentioned above the plaintiff was paid on a salary basis at a rate of double the weekly minimum. Accordingly, the Court finds that the plaintiff's employment falls within the exemption of an executive employee.

### C. Highly Compensated Employee Exemption

The defendants also argue that the plaintiff satisfied the requirements for the highly compensated employee exemption. The highly compensated employee exemption applies to employees who have a "total annual compensation of at least $100,000.00" (which must include

at least $455.00 per week paid on a salary or fee basis) and who regularly and customarily perform at least one of the duties of an executive administrative, or professional employee. 29 C.F.R. § 541.601(a), (b)(1). "An employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100." 29 C.F.R. § 541.601(c). An employee may still qualify for the highly compensated employee exemption if his yearly compensation is more than $100,000, even if he has not a worked a full 52-week period. *See* 29 C.F.R. § 541.601(b)(3) (if an employee works for the employer only part of a year, the employee may qualify for the exemption if the employee "receives a pro rata portion" of $100,000 "based upon the number of weeks that employee will be or has been employed."). As a Toolpusher, the plaintiff customarily and regularly directed the work of two or more employees. Though he may not have worked every day of a work week, the plaintiff annually earned well over $100,000 while working for the defendants. Thus, the defendants have met its burden of showing that the plaintiff satisfied the requirements of the highly compensated employee exemption.

V. **CONCLUSION**

Based on the foregoing analysis and discussion, the defendants' motion for summary judgment is **GRANTED** and the plaintiff's partial motion for summary judgment is **DENIED**.

It is so **ORDERED**.

SIGNED on this 21st day of December, 2018.

_____
Kenneth M. Hoyt
United States District Judge